UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHORE CHAN BRAGALONE DEPUMPO LLP, a Texas Limited Liability Partnership, MICHAEL SHORE, and ALFONSO CHAN, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:11-CV-0891-B |
| GREENWICH INSURANCE COMPANY, | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiffs' Motion for Partial Summary Judgment (doc. 38), filed January 27, 2012, and Defendant's Motion for Summary Judgment (doc. 35), filed January 27, 2012. For the reasons stated below, Plaintiffs' Motion is **GRANTED in part and DENIED in part** and Defendant's Motion is **GRANTED in part and DENIED in part.**

### I.

### BACKGROUND

This case arises out of an insurance dispute between the two parties. Plaintiffs Shore Chan Bragalone, Michael Shore, and Alfonso Chan (together, "Shore Chan") filed this suit against Greenwich Insurance Company ("Greenwich"), alleging that the latter breached its insurance agreement when it failed to defend Shore Chan against a third party suit.

Shore Chan is a law firm based in Dallas. Texas. Am. Compl. ("Compl.") ¶ 11. In 2008, to protect itself against potential lawsuits, Shore Chan purchased an insurance agreement ("Insurance

- 1 -

Agreement") from Greenwich. *Id.* ¶ 11. Under the Insurance Agreement, which was in effect from August 4, 2008, until August 4, 2009, Greenwich agreed to pay "all damages and defense expenses arising out of a claim . . . ." *Id.* ¶ 23; App. to Def.'s Mot. for Summ. J. ("App. to Def.'s Mot.") 4, ¶ B. The Insurance Agreement defines a Claim as "any demand received by [Shore Chan] for money, services or any other thing of value arising out of [Shore Chan's] acts, errors, or omissions in providing professional services." Compl. ¶ 23; App. to Def.'s Mot. 3, ¶ A(1). Among other things, professional services are defined as services that are performed "for a client in [Shore Chan's] capacity as a lawyer" or services that are performed "as an administrator, conservator, executor, guardian, trustee, receive, or in any similar fiduciary capacity, provided that such services are performed in connection with and incidental to [Shore Chan's] practice of law."[1] Compl. ¶ 23; App. to Def.'s Mot., ¶ A(9).

In 2009, Shore Chan was sued in a lawsuit by Steven W. Thrasher, individually and d/b/a Thrasher Associates ("Thrasher Plaintiffs") in state court in Dallas County ("Thrasher Lawsuit"). Compl. ¶ 8. In the lawsuit, the Thrasher Plaintiffs allege that they entered into a referral agreement with Shore Chan,[2] wherein Shore Chan promised to pay a percentage of attorneys' fees that they received as a result of cases that were referred to them by the Thrasher Plaintiffs (the "Referral Agreement"). *Id.* ¶ 12. According to the Thrasher Plaintiffs, Shore Chan has failed to share the

---

[1] The Insurance Agreement contains five separate definitions of professional services. The Court will discuss only the two above given that the parties did not address the remaining three in their Motions.

[2] The Thrasher Plaintiffs originally entered into the Referral Agreement with the firm Shore Dreary in 2003. Compl. ¶ 12. Shore Dreary is no long an existing law firm; in 2004, Shore and Chan left Shore Dreary and jointed Akin Gump. *Id.* ¶ 4. On May 1, 2005, Shore and Chan left Akin Gump and formed Shore Chan, the Plaintiff named in this suit. *Id.*

proceeds it received from the settlement of various lawsuits (the "Thrasher Amended Petition"[3]). *Id.* ¶ 15. Notably, the Thrasher Plaintiffs claim that they referred the University of Texas at Arlington ("UTA"), which was interested in licensing and enforcing U.S. Patent No. 4,674,112 ("112 Patent"), to Shore Dreary, which assisted UTA in securing a number of settlements and licenses to receive payments. *Id.* ¶¶ 14, 17. The Thrasher Lawsuit seeks to recover approximately $600,000 in actual damages, in addition to attorneys' fees, interest, and exemplary damages. *Id.* ¶ 20.

On April 9, 2009, Jeff Goode, Vice President of Claims for XL Select Professional, notified Shore Chan on behalf of Greenwich that it had been informed of the Thrasher Lawsuit, but indicated that Greenwich would deny coverage. *Id.* ¶ 25. Goode explained that the Thrasher Lawsuit did not "arise out of professional services," and furthermore, a number of exclusionary provisions in the Insurance Agreement would preclude coverage. *Id.* ¶ 26. Consequently, Greenwich informed Shore Chan that it could proceed in the Thrasher Lawsuit in the manner it deemed appropriate. *Id.* In March 2010, Shore Chan, sent Greenwich the Thrasher Plaintiffs' First Amended Petition and asked Greenwich to reconsider its denial of coverage. *Id.* ¶ 33. On May 24, 2010, Greenwich reiterated that it did not believe that the Thrasher Lawsuit was covered under the Insurance Agreement. *Id.* ¶ 35.

On April 6, 2011, Shore Chan filed this lawsuit in state court Dallas County, which Greenwich subsequently removed on the basis of diversity jurisdiction. Def.'s Not. of Removal ¶ 4. On May 26, 2011, Shore Chan filed an Amended Complaint and listed the following causes of action: (1) breach of the insurance contract; (2) violations of Texas Insurance Code Chapter 541;

---

[3] The Thrasher Amended Petition was filed in state court in Dallas on April 23, 2010, and amended the Original Petition (the "Thrasher Original Petition").

(3) violations of Texas Insurance Code Chapter 542; (4) invocation of rights to additional damages under the Texas Insurance Code; (5) breach of duty of good faith and fair dealing; (6) declaratory judgment that the Insurance Policy covers the Thrasher Lawsuit; (7) attorneys' fees and costs; and (8) exemplary damages.

On January 27, 2012, both parties filed Motions for Summary Judgment. Greenwich's Motion argues that it was correct to deny coverage because the Insurance Agreement requires that the claims arise out of professional services. The Thrasher Lawsuit, in Greenwich's view, involves a business decision that is unrelated to Shore Chan's expertise in providing legal services. Alternatively, Greenwich argues that the Insurance Agreement would not require coverage as a result of four enumerated exclusions that are applicable to the Thrasher Lawsuit ("Exclusions"). In its Motion for Partial Summary Judgment, Shore Chan argues that Greenwich has a duty to defend because the Thrasher Lawsuit arises out of its professional services, which resulted in the settlements that are disputed by the Thrasher Plaintiffs.

## II.

## LEGAL BACKGROUND

The purpose of summary judgment is "to enable a party who believes there is no genuine dispute as to a separate fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Accordingly, Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).

The summary judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs*, 919 F.2d 301, 303 (5th Cir. 1990). However, if the non-movant ultimately bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Rather, the summary judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting the non-movant's case. *Id.* When the movant bears the burden of proving an affirmative defense at trial, "it must establish beyond dispute all of the defense's essential elements." *Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 241 (5th Cir. 2006) (citing *Martin v. Alamo Cmty. Coll. Dist.*, 35 F.3d 409, 412 (5th Cir. 2003)).

Once the summary judgment movant has met this burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). Factual controversies regarding the existence of a genuine issue for trial must be resolved in favor of the non-movant. *Little*, 37 F.3d at 1075. Nevertheless, a non-movant may not simply rely on the Court to sift through the record to find a fact issue, but must instead point to specific evidence in the record and articulate precisely how that evidence supports the challenged claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Moreover, the evidence the non-movant does provide must raise more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). This evidence must be such that a jury could reasonably base a verdict in the non-movant's favor. *Anderson*, 477 U.S. at 248. If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d

at 1075.

## III.

## ANALYSIS

The dispute between the parties centers primarily on the meaning of key provisions in the Insurance Agreement that delineate the contours of Greenwich's coverage. In particular, the parties offer differing interpretations of the definition of "Claim" under the Insurance Agreement. Shore Chan asserts that, under a liberal reading of the Insurance Agreement, Greenwich must provide coverage if the damages that they allege would result but for the professional services that Shore Chan provided to UTA and other clients. Greenwich contends, on the other hand, that the Insurance Agreement narrowly defines professional services to exclude such business decisions as to whether to share the fees gained with third parties as a result of settlements. The Court will first address the rules governing review of insurance policies, and then examine whether the Insurance Agreement gives rise to a duty to defend.

A.   *The Duty to Defend*

Under Texas law, "'the duty to defend is distinct from, and broader than, the duty to indemnify.'" *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490 (Tex. 2008) (quoting 14 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 200:1 (3d ed. 2007)). An insurer's duty to defend is triggered if the factual allegations in the plaintiff's complaint potentially support a covered claim, while the duty to indemnify is based on whether the alleged facts are actually established. *Id.*; *see also Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 201 (Tex. 2004) ("A liability insurer is obligated to defend a suit if the facts alleged in the pleadings would give rise to any claim within the coverage of the policy.").

In determining whether the insurer bears a duty to defend, Texas courts apply the eight-corners rule, which considers the third-party pleadings[4] in light of the policy provisions, without regard to the truth or falsity of the allegations. *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006). Consequently, facts beyond either the pleadings or the insurance policy are generally irrelevant to the court's determination of whether the insurer has a duty to defend. *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). In applying the eight-corners rule, courts construe the pleadings liberally and resolve all doubts regarding the duty in favor of coverage. *Zurich Am. Ins.*, 268 S.W.3d at 491; *see also Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 133 (Tex. 2010) ("Terms in insurance policies that are subject to more than one reasonable construction are interpreted in favor of coverage."). Furthermore, it is the factual allegations, rather than the theories alleged, that determine whether the insurer has a duty to defend. *Zurich Am. Ins.*, 268 S.W.3d at 495. Nevertheless, it is the insured, and not the insurer, that bears the burden of proving that the claims falls within the coverage provisions of the policy. *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 781-82 (Tex. 2008).

Under Texas law, insurance policies are subject to the general rules of interpretation and construction applicable to contracts. *Progressive County Mut. Ins. Co. v.* Sink, 107 S.W.3d 547, 551 (Tex. 2003). "In construing the terms of a contract, the court's primary purpose is always to ascertain

---

[4] In this case, the parties' Motions discuss the two pleadings - the Thrasher Original Petition and the Thrasher Amended Petition - in tandem at times and discretely in other portions of their briefing.. Given that the eight-corners rule requires the Court to examine both the pleadings and the policy at issue, the analysis may change subtly depending on whether the Court considers the Original or Amended Petition. The parties have not addressed this shift in their briefing, but the Court notes that the only material distinction between the two pleadings is as to the applicability of the Exclusions.

the true intent of the parties as expressed in the written instrument." *Gregg & Valby, L.L.P. v. Great Am. Ins. Co.*, 316 F.Supp. 2d 505, 508 (S.D. Tex. 2004); *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). Whether an ambiguity exists in the language of an insurance contract is a question of law for the court to determine. *Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). Therefore, if the contract can be given "a definite or certain legal meaning," then it is unambiguous and may be enforced as written. *Nat'l Union Fire*, 907 S.W.2d at 520. The court will not find a contract ambiguous, however, merely because the parties advance conflicting interpretations. *Kelley–Coppedge, Inc.*, 980 S.W.2d at 465.

  i. <u>Professional services</u>

Each party advances an alternative interpretation of the terms "professional services" as used in the Insurance Agreement. Given that a Claim is defined as "arising out of [Shore Chan's] acts, errors, or omissions in providing professional services," the Court will first evaluate the scope of "professional services" as interpreted by Texas courts. Shore Chan argues that "professional services of" includes the acts it performed on behalf of its clients, including reaching settlements and licensing agreements regarding Patent 112. Greenwich, on the other hand, contends that "professional services" cannot include fee-splitting relationships, and therefore the Referral Agreement is unrelated to professional services performed by attorneys.

Under Texas law, professional services "must arise out of acts particular to the individual's specialized vocation." *Atlantic Lloyud's Ins. Co. Of Tex. v. Susman Godfrey, L.L.P.*, 982 S.W.2d 472, 476-77 (Tex. App.–Dallas 1998, pet. denied). To constitute a professional service, then, "it must be necessary for the professional to use his specialized knowledge or training." *Id.* at 477. Thus, not every task performed by an attorney may be a professional service, but only those that require the

legal skill and knowledge of a lawyer. *Id.*

In their Motions, Shore Chan argues, and Greenwich apparently concedes, that negotiating settlements and entering into licensing agreements are legal services. *See* Def.'s Reply 8. Greenwich instead argues that the Thrasher Plaintiffs complain not about the settlements or licensing agreements, but about Shore Chan's failure to adhere to the Referral Agreement. Greenwich's argument, then, is not one that would require the Court to find that Shore Chan offered no professional services whatsoever, but only that the Thrasher Lawsuit does not arise out of those professional services. Therefore, the Court finds that Shore Chan indeed offered professional services, and now turns to whether the claims pressed in the Thrasher Lawsuit arise from such services.

ii.   Arising out of

Shore Chan argues that "arising out of" is given broad meaning that requires only but for causation. Greenwich, on the other hand, contends that "arising out of" has a far narrower meaning that would require Shore Chan to demonstrate that its professional services were a substantial factor in causing the alleged injury to the Thrasher Plaintiffs. The Court agrees with the Plaintiffs.

The Texas Supreme Court has held that "arise out of" requires only a causal connection or relation between the act and the alleged injury. *Utica*, 141 S.W.3d at 203. That is, the insured party must demonstrate a causal relationship between its services and the injury, though not necessarily direct or proximate causation. *Id.*; *see also Mid-Century Ins. Co. v. Lindsey*, 997 S.W.2d 153, 156 (Tex. 1999) ("For liability to 'arise out of' the use of a motor vehicle, a causal connection or relation must exist between the accident or injury and the use of the motor vehicle."). The Fifth Circuit has similarly held that the words "arising out of" are "broad, general, and comprehensive terms effecting broad coverage." *Willbros RPI, Inc. v. Continental Cas. Co.*, 601 F.3d 306 (5th Cir. 2010) (quoting

*Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 370 (5th Cir.1998)).

Greenwich relies primarily on *Lancer Ins. Co. v. Garcia Holiday Tours* to argue that the Texas Supreme Court has recently refined its interpretation of these terms. 345 S.W.3d 50 (Tex. 2011). However, *Lancer* dealt specifically with automobile insurance that contained the language "resulting from," which led the court to conclude that its analysis from *Lindsey*, where the insurance at issue included the terms "arise out of," was nonetheless still applicable. *Id.* 345 S.W.3d at 54-56. Indeed, the court cited *Utica* with approval and found that "resulting from" is properly understood as "flowing from" or "having its origin in." *Id.* at 55 (quoting 7 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 101.52 (3d ed. 2007)). Therefore, the Texas Supreme Court found that, when interpreting automobile insurance coverage, the "insured vehicle must not merely contribute to cause the condition . . . but must itself produce the injury," rather than merely be the site of the injury. *Id.* at 56. Though the *Lancer* Court did not explicitly confine its analysis to cases involving automobile insurance, its explanation that the automobile must have been a "substantial factor" in bringing about the injury is understood properly not as redefining "arising out of" under Texas law, but as illustrating a "sufficient nexus" between an act and injury as applied to auto insurance. *Id.* at 56-57. In other words, Shore Chan need not demonstrate that the professional services were a "substantial factor" that led to the Thrasher Lawsuit, but that there is a causal connection, whether direct or indirect, between its services and the injury.

Greenwich argues that the Thrasher Lawsuit is premised on the breach of the Referral Agreement and bears no relation to the professional services provided by Shore Chan. In other words, in Greenwich's view, because the Thrasher Lawsuit does not seek damages for the negligent rendering of legal services, the suit arises out of administrative or business decisions rather than

professional services. To support this distinction, Greenwich relies on *Gregg & Valby, L.L.P. v. Great Am. Ins. Co.*, 316 F.Supp. 2d 505 (S.D. Tex. 2004). In *Gregg*, the district court found that an attorney's billing and fee-setting practice did not require legal skill or knowledge, and were therefore properly understood as non-professional services. *Id.* at 514. The only acts at issue, however, were the bill and fee-setting practices. *Id.* at 512-13. In other words, the plaintiffs in *Gregg* did not allege any malfeasance based on the attorney's legal services; rather, the claims arose solely from the attorney's bill and fee-setting arrangements. *Id.* at 515.

However, unlike *Gregg*, the Thrasher Plaintiffs have alleged that Shore Chan is liable as a result of its settlement and licensing negotiations. The Thrasher Amended Petition alleges that they "referred clients and potential cases and matters" to Shore Chan and that they were to assist with the "prosecution of the 112 Patent claims." App. to Pl.'s Mot. for Summ. J. ("App. to Pl.'s Mot.") 16-17. The Thrasher Amended Petition also alleges that Shore Chan has "entered into numerous settlements and license to receive payments," the proceeds of which must be shared under the Referral Agreement. *Id.* at 20. Though Greenwich is correct that Shore Chan is alleged to have breached a contract rather than performed negligently while providing legal services, the contractual relationship nonetheless relates to Shore Chan's performance as attorneys. *See Cont'l Cas. Co. v. Cole*, 809 F.2d 891, 896 (D.C. Cir. 1987) (finding that a claim for breach of contract arose from an attorney's professional services because his settlement was the origin of the alleged damages). In reaching settlements and licensing agreements relating to the 112 Patent, Shore Chan was performing legal services when the alleged damages contained in the Thrasher Amended Petition arose.

Accordingly, the Court finds that Shore Chan's interpretation of the coverage provisions is

reasonable. *See Zurich Am. Ins.*, 268 S.W.3d at 491. Shore Chan has satisfied its burden of demonstrating that, subject to the Exclusions, both the Thrasher Original Petition and the Thrasher Amended Petition contain claims that trigger Greenwich's duty to defend under the Insurance Agreement. The Court will now address the Exclusions in order to determine whether these applied to the Thrasher Lawsuit.

B.   *Exclusions under the Insurance Agreement*

Having determined that the Insurance Agreement encompasses the injuries alleged in the Thrasher Amended Petition, the Court will next consider whether any of the Exclusions in the Insurance Agreement negate this duty. Greenwich contends that four separate provisions bar relief for Shore Chan.

Under Texas law, the insurer bears the burden of proving that an exclusion provision bars coverage of the alleged injury. *Nat'l Cas. Co. v. W. World Ins. Co.*, 669 F.3d 608, 615 (5th Cir. 2012). "Exclusions are narrowly construed, and all reasonable inferences must be drawn in the insured's favor." *Gore Designs Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 370 (5th Cir. 2008). Furthermore, a court should adopt the interpretation of an exclusionary provision as long as that interpretation is not unreasonable, even if the interpretation urged by the insurer is more reasonably or likely a more accurate reflection of the parties' intent when agreeing to the insurance policy. *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 133 (Tex. 2010).

i.   Exclusion 5

Greenwich first argues that Exclusion 5 precludes coverage to Shore Chan. Under the Insurance Agreement, Exclusion 5 bars "[a]ny claim made by or against any business enterprise not named" in the Insurance Policy that "arises out of [Shore Chan's] acts, errors, or omissions in [its]

capacity as an officer, director, partner, or employee of such enterprise." App. to Def.'s Mot. 5, ¶ G(5). The Thrasher Plaintiffs specifically pleaded that they entered into a joint enterprise with Shore Chan, which consequently owed them a fiduciary duty. App. to Pl.'s Mot. 28. However, it is well-settled that the duty to defend cannot be extinguished merely because one claim may be excluded. *See Thomas J. Sibley, P.C. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*, 921 F. Supp. 1523, 1530 (E.D. Tex. 1996) ("If either the RICO or LUTPA claims in the underlying suit are not excluded by the policy exclusions, then National Union must defend the Sibley firm against all claims."); *see also Brooks, Tarlton, Gilbert, Douglas & Kressler v. U.S. Fire Ins. Co.*, 832 F.2d 1358 (5th Cir. 1987).

Greenwich must demonstrate, then, that Exclusion 5 applies to the remainder of the Thrasher Plaintiff's claims. In its briefing, Shore Chan fails to offer a competing interpretation of Exclusion 5 and instead argues that Greenwich's argument must fail because Thrasher's Original Petition contained no allegations regarding a "joint enterprise," and therefore Greenwich had a duty to defend up until at least April 23, 2010. Shore Chan then argues that after the petition was amended, other claims would trigger Greenwich's duty to defend. Here, Shore Chan's miserly reading of Exclusion 5 is at odds with its interpretation of which claims are covered by the Policy. Exclusion 5 merely states that the claim is excluded if it "arises out of" Shore Chan's acts as a partner of the enterprise. Therefore, the claim need not be for breach of a fiduciary duty in a joint enterprise; it must merely bear a causal relation with Shore Chan's acts as a partner of the enterprise. *Utica*, 141 S.W.3d at 203.

Though Shore Chan is correct that the duty would have applied until at least the filing of the Thrasher Amended Petition, given that neither party has offered a definitive interpretation of Exclusion 5 as applied to the Amended Petition, the Court cannot say, as a matter of law, that

Exclusion 5 would or would not preclude coverage of the Thrasher Amended Petition. Therefore, the Court finds that Exclusion 5 would not have precluded coverage until at least the Thrasher Original Petition was amended, but there remains a genuine issue of material fact as to whether Exclusion 5 applies to the Thrasher Amended Petition.

    ii.    <u>Exclusion 10</u>

Greenwich next claims that Exclusion 10, which bars "liability of others which [Shore Chan] assume[s] under any contractual agreement," applies to Thrasher's Petition. App. to Def.'s Mot. 6, ¶ G(10). To support this contention, Greenwich argues that Shore Chan must have assumed liability by way of contract. This statement assumes facts that are neither in the Thrasher Amended Petition nor the Insurance Agreement. Therefore, it requires the Court to go beyond the parameters of the eight-corners rule. Greenwich, then, has failed to establish that Exclusion 10 bars coverage of the alleged injury. *Nat'l Cas. Co.*, 669 F.3d at 615.

    iii.    <u>Exclusion 8</u>

Greenwich next claims that Exclusion 8 bars Shore Chan's claims for relief. Exclusion 8 prevents coverage for "[a]ny claim arising out of a criminal, intentionally wrongful, fraudulent or malicious act or omission." App. to Def.'s Mot. 6, ¶ G(8). As with Exclusion 5, the allegations in the Thrasher's Original Petition make no reference to "intentional acts." Therefore, Greenwich had a duty to defend until at least April 23, 2010.

Nevertheless, Shore Chan's interpretation of Exclusion 8 again limits the meaning of "arising out of." The causes of action alleged in Thrasher's Amended Petition, which includes allegations of intentionally wrongful acts, need not be premised on a showing of intent. Rather, the claims merely must arise out of those intentional acts. In other words, even if a claim for a breach of contract does

not require a showing of intent, if the breach itself were intentional, then the claim would arise out of an intentionally wrongful act. Given that the Thrasher Plaintiffs allege several times that Shore Chan breached the contract knowingly with the intent to use information for its own advantage, *see, e. g.,* App.'s to Def.'s Mot. 41, 43, there is a factual basis to presume that Shore Chan's actions arose from intentionally wrongful acts. Accordingly, the Court cannot say, as a matter of law, that Exclusion 8 would or would not preclude coverage of the Thrasher's Amended Petition. Therefore, the Court finds that Exclusion 8 would not have precluded coverage until at least the Thrasher Original Petition was amended, but there remains a genuine issue of material fact as to whether Exclusion 8 applies to the Thrasher Amended Petition.

  iv. <u>Exclusion 7</u>

Greenwich finally argues that Exclusion 7, which bars "[a]ny claim arising out of acts, errors, or omissions that occurred prior to the effective date of this policy if . . . any insured knew . . . that a professional duty had been breach or a claim would be made." App. to Def.'s Mot. 6, ¶ G(7). Greenwich states that until 2008, Shore Chan wrongfully withheld fees from Thrasher. To apply this exclusion, the Court would have to go well beyond the eight-corners rule and make a series of assumptions, none of which is supported by the Thrasher Amended Petition. Therefore, Greenwich has failed to establish that Exclusion 7 bars coverage of the alleged injury.

Accordingly, the Court finds that none of the Exclusions applies to the Thrasher Original Petition. Greenwich had a duty to defend against these claims, and in failing to provide coverage, breached the Insurance Agreement. However, there remain genuine issues of material fact as to whether Exclusion 5 and Exclusion 8 may apply to Thrasher's Amended Petition. Therefore, there remains a genuine issue of material fact as to whether the duty to defend continued after the Original

Petition was amended on April 23, 2010, and consequently the extent of damages that Shore Chan may be entitled to.

C.   *Extra-Contractual Claims*

    i.   <u>Breach of Duty of Good Faith and Fair Dealing</u>

Greenwich moves for summary judgment on Shore Chan's claim that Greenwich breached its duty of good faith and fair dealing. Shore Chan does not contest this in its Response. Indeed, under Texas law, the refusal to defend a third party claim cannot give rise to a tort claim for breach of the duty of good faith and fair dealing. *See Safeco Ins. Co. of Ind. v. Marcus Hiles*, No. 3:10–cv–1289–D, 2011 WL 3500998, at *14 (N.D. Tex. Aug. 9, 2011) ("And while an insurer owes its insured a duty of good faith and fair dealing in the processing of the insured's own claim of loss, 'an insurer owes the insured no duty of good faith and fair dealing' when handling a third-party claim.") (citation omitted); *Traveler Indem. Co. of Conn. v. Presbyterian Healthcare Res.*, 313 F.Supp. 2d 648, 651 (N.D. Tex. 2004). Accordingly, Greenwich's motion for summary judgment as to this claim is **GRANTED** and Shore Chan's claim that Greenwich breached the duty of good faith and fair dealing is **DISMISSED**.

    ii.   <u>Chapters 541 and 542 of the Texas Insurance Code</u>

Shore Chan's Complaint includes three separate counts alleging violations of the Texas Insurance Code. First, Shore Chan alleges that Greenwich violated chapter 541 of the Texas Insurance Code. Chapter 541 of the Texas Insurance Code prohibits trade practices that are "unfair methods of competition or unfair or deceptive acts or practices." TEX. INS. CODE ANN. § 541.001(1) (West 2009). Shore Chan alleges that Greenwich violated three specific provisions within this chapter: sections 541.060, 541.061, and 541.051(1)(A).

Under section 541.060, the insuring party is barred from engaging in unfair settlement practices by doing the following: (1) misrepresenting to a claimant a material fact or policy provision relating to coverage at issue; (2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear; and (3) refusing to pay a claim without conducting a reasonable investigation with respect to the claim. Pl.'s Compl. ¶ 43; *see* TEX. INS. CODE ANN. § 541.060(1)-(2), (5). Under section 541.061, an insurer may not misrepresent the policy by doing the following: (1) making an untrue statement of material fact; (2) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact; and (3) making a material misstatement of law. Pl.'s Compl. ¶ 44; *see* TEX. INS. CODE ANN. § 541.061(1), (3), (4). Finally, under section 541.051, an insurer is prohibited from making, issuing, or circulating a statement misrepresenting the terms of the insurance policy. Pl.'s Compl. ¶ 45; *see* TEX. INS. CODE ANN. § 541.051(1)(A).

Greenwich seeks to dismiss this claim and argues that failure to perform under a contract, and communications indicating that it would not provide coverage for the Thrasher Lawsuit, are not misrepresentations actionable under the Texas Insurance Code. Greenwich has also provided a declaration from Jeff Goode, a Texas attorney, who claims he reviewed the Thrasher Original Petition, the Insurance Agreement, and did "some brief research" before making a coverage determination. App. to Def.'s Mot. 208-09. Shore Chan, for its part, contends only that there is a genuine issue of material fact regarding these claims, which should preclude summary judgment for Greenwich. The Court agrees with Shore Chan. While Greenwich has put forward evidence that it performed some research before denying coverage, and that it may have acted reasonably if incorrectly in denying coverage, that question is one of fact and more properly left to the jury. *See*

*Tucker v. State Farm Fire and Cas. Co.*, 981 F.Supp.461, 465 n.2 (S.D. Tex. 1997); *see also Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997) ("[W]e reject the suggestion that whether an insurer's liability has become reasonably clear presents a question of law for the court rather than a fact issue for the jury. Treating the issue as one of law would undeniably expand this Court's ability to overturn bad-faith judgments."). Therefore, there remains a genuine issue of material fact as to the question of whether Greenwich violated chapter 541, and committed unfair or deceptive acts with respect to its refusal to provide coverage to Shore Chan.

Finally, Shore Chan alleges that Greenwich violated chapter 542 of the Texas Insurance Code. Chapter 542 of the Texas Insurance Code prohibits an insurer from engaging in unfair settlement practices, which includes the following: (1) knowingly misrepresenting to a claimant pertinent facts or policy provisions relating to the coverage; and (2) not attempting in good faith to effect a prompt, fair, and equitable settlement of a claim submitted in which liability has become reasonably clear. TEX. INS. CODE ANN. § 542.003(a), (b)(1), (b)(4) (West 2009). Shore Chan also alleges that Greenwich violated section 542.058 because it delayed payment for coverage of the Thrasher Lawsuit, and consequently that it owes interest on the amount of the claim at the rate of eighteen percent per year, along with reasonable attorneys' fees. TEX. INS. CODE ANN. §§ 542.058, 542.060(a).

Under Shore Chan's theory, then, it is entitled to damages as a result of Greenwich's violation of the Texas Insurance Code, as well as for its claim of breach of contract. Greenwich responds that the damages that Shore Chan seeks are related to its litigation expenses, which are not recoverable. However, the Texas Insurance Code specifically provides recovery for such damages where the insurer has been found to have delayed in payment of a claim. *See* § 542.060(a). While Greenwich

is correct that Shore Chan can recover for an extra-contractual claim only if the injury caused is independent of the injury that would have resulted from a wrongful denial of policy benefits, *see Parkans Int'l LLC v. Zurich Ins. Co.*, 299 F.3d 514, 519 (5th Cir. 2002), given the materials before the Court, the question of whether Greenwich acted reasonably and in good faith cannot be established as a matter of law. Accordingly, Greenwich's Motion for Summary Judgment with respect to claims under the Texas Insurance Code is **DENIED**.

## IV.

## CONCLUSION

Based on the foregoing, then Defendant's Motion for Summary Judgment is **GRANTED in part and DENIED in part** and Plaintiffs' Motion for Partial Summary Judgment is **GRANTED in part and DENIED in part**.

The Court finds that, drawing inferences in favor of the insured party, the Thrasher Lawsuit triggered Greenwich's duty to defend under the Insurance Agreement because it arose from Shore Chan's professional services. Furthermore, no exclusionary provision applied to the Thrasher Original Petition, and therefore Defendant bore a duty to defend until at least April 23, 2010. Therefore, the Court finds that Defendants breached the Insurance Agreement when it failed to defend the Original Petition, and the Court **GRANTS** Plaintiff's Motion with regard to Count 1. However, there remains a genuine issue of fact as to whether two exclusionary provisions apply to Thrasher's Amended Petition, and consequently what damages to assess. Thus, while the Court finds that Defendant breached its duty to defend under the Original Petition, there remains a genuine issue of fact as to whether it breached by not defending against the Thrasher Amended Petition.

There also remain genuine issues of material fact regarding Plaintiffs' extra-contractual claims

under the Texas Insurance Code. Finally, Defendant has established as a matter of law that it did not breach a duty of good faith and fair dealing in denying coverage. Therefore, the Court **GRANTS** Defendant's Motion with regard to Count 5. Plaintiff has remaining claims in Counts 2, 3, 4, 6, 7 and 8.

    SO ORDERED.

    SIGNED April 11, 2012

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE