UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SHORE CHAN BRAGALONE DEPUMPO LLP, MICHAEL SHORE, and ALFONSO CHAN,<br><br>Plaintiffs,<br><br>v.<br><br>GREENWICH INSURANCE COMPANY,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§  CIVIL ACTION NO. 3:11-CV-891-B<br>§<br>§<br>§<br>§<br>§ |

## MEMORANDUM OPINION & ORDER

Before the Court are Shore Chan's Motion for Partial Summary Judgment on the issue of Exclusions 5 and 8 (doc. 113); Greenwich's Motion for Summary Judgment on the issue of Exclusions 5 and 8 (doc. 116); Shore Chan's Motion for Partial Summary Judgment regarding litigation of fee reasonableness (doc. 110); and Greenwich's Motion for Summary Judgment regarding Shore Chan's ability to recover consequential damages (doc. 105), all filed on May 4, 2012. For the reasons stated below, the Court **GRANTS** Greenwich's Motion (doc. 116) and **DENIES** Shore Chan's Motion (doc. 113) on the issue of Exclusions 5 and 8. The Court also **GRANTS** Greenwich's Motion (doc. 105) on the issue of consequential damages. Finally, the Court **GRANTS IN PART** Shore Chan's Motion (doc. 110) on the issue of litigating its fee reasonableness.

I.

BACKGROUND

This case arises out of an insurance dispute between the two parties. Plaintiffs Shore Chan

Bragalone, Michael Shore, and Alfonso Chan (together, "Shore Chan") filed this suit against Greenwich Insurance Company ("Greenwich"), alleging that the latter breached its insurance agreement when it failed to defend Shore Chan against a third party suit.

Shore Chan is a law firm based in Dallas, Texas. Doc. 10, Am. Compl. ¶ 11. In 2008, to protect itself against potential lawsuits, Shore Chan purchased an insurance agreement ("Insurance Agreement") from Greenwich. *Id.* ¶ 22. Under the Insurance Agreement, which was in effect from August 4, 2008 until August 4, 2009, Greenwich agreed to pay "all damages and defense expenses arising out of a claim." *Id.* ¶ 23. The Insurance Agreement defines a claim as "any demand received by [Shore Chan] for money, services or any other thing of value arising out of [Shore Chan's] acts, errors, or omissions in providing professional services." *Id*. The policy defines professional services in relevant part as services that are performed "[f]or a client in [Shore Chan's] capacity as a lawyer" or services that are performed "[a]s an administrator, conservator, executor, guardian, trustee, receiver, or in any similar fiduciary capacity, provided that such services are performed in connection with and incidental to [Shore Chan's] practice of law." Doc. 10-1, Ex. at 36-37.

In 2009, Shore Chan was sued in a lawsuit by Steven W. Thrasher, individually and d/b/a Thrasher Associates ("Thrasher Plaintiffs") in state court in Dallas County ("Thrasher Lawsuit"). Doc. 10, Am. Compl. ¶ 15. In their original petition ("Thrasher Original Petition"), the Thrasher Plaintiffs allege that they entered into a referral agreement with Shore Chan, wherein Shore Chan promised to pay a percentage of attorney's fees that they received as a result of cases that were referred to them by the Thrasher Plaintiffs (the "referral agreement"). *Id.* ¶ 12. According to the Thrasher Plaintiffs' amended petition ("Thrasher Amended Petition"), Shore Chan failed to share the proceeds it received from the settlement of various lawsuits. *Id.* ¶ 15. Notably, the Thrasher

Plaintiffs claim that they referred the University of Texas at Arlington ("UTA"), which was interested in licensing and enforcing U.S. Patent No. 4,674,112 ("112 Patent"), to Shore Dreary, which assisted UTA in securing a number of settlements and licenses to receive payments. *Id.* ¶ 14. The Thrasher Lawsuit seeks to recover approximately $600,000 in actual damages, in addition to attorney's fees, interest, and exemplary damages. *Id.* ¶ 20.

On April 1, 2009, Jeff Goode, Vice President of Claims for XL Select Professional, notified Shore Chan on behalf of Greenwich that it had been informed of the Thrasher Lawsuit, but that Greenwich would deny coverage. *Id.* ¶ 25. Goode explained that the Thrasher Lawsuit did not "arise out of professional services" and that a number of exclusionary provisions in the Insurance Agreement would preclude coverage. *Id.* ¶ 26. Consequently, Greenwich informed Shore Chan that it could proceed in the Thrasher Lawsuit in the manner it deemed appropriate. *Id.* In March 2010, Shore Chan sent Greenwich the Thrasher Amended Petition and asked Greenwich to reconsider its denial of coverage. *Id.* ¶ 33. On May 24, 2010, Greenwich reiterated that it did not believe that the Thrasher Lawsuit was covered under the Insurance Agreement. *Id.* ¶ 35.

On April 6, 2011, Shore Chan filed this lawsuit in state court in Dallas County, which Greenwich subsequently removed on the basis of diversity jurisdiction. Doc. 2, Notice. On May 26, 2011, Shore Chan filed an Amended Complaint and listed the following causes of action: (1) breach of the insurance contract; (2) violations of Texas Insurance Code Chapter 541; (3) violations of Texas Insurance Code Chapter 542; (4) invocation of rights to additional damages under the Texas Insurance Code; (5) breach of duty of good faith and fair dealing; (6) declaratory judgment that the Insurance Policy covers the Thrasher Lawsuit; (7) attorney's fees and costs; and (8) exemplary damages.

Both parties filed cross-motions for summary judgment. Greenwich argued that it correctly denied coverage because, in its view, the Thrasher Lawsuit did not involve claims arising out of professional services or, in the alternative, four exclusions in the Insurance Agreement prevented coverage. Shore Chan, in turn, argued that Greenwich had a duty to defend because the Thrasher Lawsuit involved claims for professional services.

In responding to the motions, this Court concluded that the Thrasher Lawsuit triggered Greenwich's duty to defend under the Insurance Agreement because the lawsuit arose out of Shore Chan's professional services and that two of the four proposed applicable exclusions did not apply. Doc. 100. However, the Court determined that a genuine issue of material fact existed as to whether Exclusions 5 and 8 to the Insurance Agreement applied to the Thrasher Amended Petition. *Id.*

The Court held a conference, and the parties agreed to submit additional motions and briefing on several issues. Doc. 103. Shore Chan and Greenwich both filed Motions for Summary Judgment on the applicability of Exclusions 5 and 8 (docs. 113 and 116); Shore Chan filed a Motion for Partial Summary Judgment regarding the litigation of its fee reasonableness (doc. 110); and Greenwich filed a Motion for Summary Judgment regarding Shore Chan's ability to recover consequential damages (doc. 105). The motions have been fully briefed and are ripe for review. The parties do not dispute the material facts relevant to the issues raised therein.

## II.

## LEGAL STANDARDS

A.  *Summary Judgment*

The purpose of summary judgment is "to enable a party who believes there is no genuine dispute as to a separate fact essential to the other side's case to demand at least one sworn averment

of that fact before the lengthy process of litigation continues." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990). Accordingly, Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The summary judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. SmithKline & French Labs*, 919 F.2d 301, 303 (5th Cir. 1990). However, if the non-movant ultimately bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Rather, the summary judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting the non-movant's case. *Id.* When the movant bears the burden of proving an affirmative defense at trial, "it must establish beyond dispute all of the defense's essential elements." *Bank of La. v. Aetna U.S. Healthcare, Inc.*, 468 F.3d 237, 241 (5th Cir. 2006) (citing *Martin v. Alamo Cmty. Coll. Dist.*, 35 F.3d 409, 412 (5th Cir. 2003)).

Once the summary judgment movant has met this burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam). Factual controversies regarding the existence of a genuine issue for trial must be resolved in favor of the non-movant. *Id.* Nevertheless, a non-movant may not simply rely on the Court to sift through the record to find a fact issue, but must instead point to specific evidence in the record and articulate precisely how that evidence supports the challenged claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.

1998). Moreover, the evidence the non-movant does provide must raise more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). This evidence must be such that a jury could reasonably base a verdict in the non-movant's favor. *Anderson*, 477 U.S. at 248. If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1075.

B.   *Applying Texas Law in Diversity*

Because the Court sits in diversity, it analyzes the claims raised by the parties under Texas law. *See Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 593 (5th Cir. 2011). This Court defers to the decisions of the Texas Supreme Court to interpret Texas law or looks to Texas appellate court decisions so long as the Court is convinced that the highest court would not hold differently. *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010). "When making an Erie guess, our task is to attempt to predict state law, not to create or modify it." *SMI Owen Steel Co. v. Marsh USA, Inc.*, 520 F.3d 432, 442 (5th Cir. 2008) (internal alterations and quotation marks omitted); *Gilbane Bldg.*, 664 F.3d at 593.

## III.

## ANALYSIS

A.   *Insurance Agreement Exclusions*

Texas law places the burden of proving that an exclusion provision bars coverage of the alleged injury on the insurer. *Nat'l Cas. Co. v. W. World Ins. Co.*, 669 F.3d 608, 615 (5th Cir. 2012). "Exclusions are narrowly construed, and all reasonable inferences must be drawn in the insured's favor." *Gore Designs Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 370 (5th Cir. 2008). Furthermore, a court should adopt the insured's interpretation of an exclusionary provision as long

as that interpretation is not unreasonable, even if the interpretation urged by the insurer is more reasonable or likely a more accurate reflection of the parties' intent when agreeing to the insurance policy. *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 133 (Tex. 2010).

In its prior motion for summary judgment, Greenwich argued that Exclusion 5 precluded coverage to Shore Chan. This Court determined that Exclusion 5 would not have precluded coverage for the Thrasher Original Petition, but that there remained a genuine issue of material fact as to whether Exclusion 5 applies to the Thrasher Amended Petition. With the issue now fully briefed, Greenwich bears the burden of demonstrating that Exclusion 5 applies. Because the duty to defend cannot be extinguished merely because one claim may be excluded, Greenwich must demonstrate that Exclusion 5 excludes coverage for *all* of the claims in the Thrasher Amended Petition. *See Brooks, Tarlton, Gilbert, Douglas & Kressler v. U.S. Fire Ins. Co.*, 832 F.2d 1358, 1367 (5th Cir. 1987); *Thomas J. Sibley, P.C. v. Nat'l Union Fire Ins. Co. of Pitts., P.A.*, 921 F. Supp. 1526, 1530 (E.D. Tex. 1996).

Under the Insurance Agreement, Exclusion 5 bars "[a]ny claim made by or against any business enterprise not named" in the Insurance Policy that "arises out of [Shore Chan's] acts, errors, or omissions in [its] capacity as an officer, director, partner, or employee of such enterprise." Doc. 10-1, Ex. at 38 (Insurance Agreement). There is no dispute that Shore Chan's agreement with the Thrasher Plaintiffs was not named in the policy. Instead, the issue is whether all of the claims in the Thrasher Amended Complaint arose out of Shore Chan's acts, errors, or omissions as a partner of its enterprise with the Thrasher Plaintiffs. This Court has previously explained that a claim "arises out of" Shore Chan's actions as a partner of the enterprise if it bears a causal relation with Shore Chan's acts as a partner of the enterprise. *See Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198,

203 (Tex. 2004).

This Court held in its prior Order that Count XV for "Joint Enterprise/Breach of Fiduciary Duty/Request for Accounting" in the Thrasher Amended Complaint is excluded from coverage under Exclusion 5. Doc. 100, Order at 13. The Court concluded that Greenwich must demonstrate whether the other claims are similarly excluded from coverage.

Greenwich indicates that the factual background portion of the Thrasher Amended Petition states that the Thrasher Plaintiffs and Shore Chan entered into a "joint enterprise." Doc. 117, Br. at 3-4. Because the background section was labeled as the "summary of facts relevant to all causes of action" and because each claim in the Thrasher Amended Petition explicitly incorporates by reference the allegation of a joint enterprise, Greenwich contends that each of the claims involves a joint enterprise. Greenwich assumes that an allegation of the existence of a joint enterprise automatically invokes Exclusion 5 of the Insurance Agreement. Greenwich does not offer a claim-by-claim analysis explaining whether each claim in the Thrasher Amended Petition relies upon the alleged existence of a joint enterprise.

The Court agrees that the Thrasher Amended Petition factual background section is labeled "Summary of Facts Relevant to All Causes of Action." Doc. 40-3, App. at 15. The Thrasher Amended Petition states that the Thrasher Plaintiffs and Shore Chan entered into a referral agreement and that the Thrasher Plaintiffs actually referred clients to Shore Chan under the agreement. *Id.* at 16-17. Through the referral agreement, the Thrasher Plaintiffs referred UTA to Shore Chan, which created the joint enterprise for the UTA venture. As Greenwich thoroughly outlines, the Thrasher Amended Petition background section frequently refers to this "joint enterprise" between the Thrasher Plaintiffs and Shore Chan and each claim fully incorporates that

fact by reference. *See* doc. 117, Br. at 4.

Under the plain language of the Insurance Agreement, however, the mere fact that the Thrasher Plaintiffs alleged the existence of a joint enterprise and generally alleged that all facts (including the existence of the joint enterprise) are relevant to their claims is not dispositive to the application of Exclusion 5. Instead, it appears to the Court that the plain language of Exclusion 5 encompasses claims that allegedly "arise out of" the joint enterprise (whether explicitly stated or not), but not claims that merely reference the statement of facts mentioning the existence of a joint enterprise. The Thrasher Plaintiffs could state that the existence of a joint enterprise is relevant to a particular claim, but if that fact is in actuality immaterial to the disposition of the claim, then Exclusion 5 would not apply.

Nonetheless, review of the Thrasher Amended Petition reveals that every claim arises out of Shore Chan's acts, errors, or omissions as a partner to Thrasher Plaintiffs in that each claim bears a causal relation to Shore Chan's role in the joint enterprise. The causes of action for "breach of contract," "promissory estoppel," "breach of covenant of good faith and fair dealing and breach of fiduciary duty," "fraud and/or fraudulent inducement," "money had and received," "assumpsit," "conspiracy," and "joint enterprise/breach of fiduciary duty/request for accounting" all involve the affirmative actions or omissions of Shore Chan as a partner to the joint enterprise in failing to fulfill its duties and promises under the joint enterprise or taking advantage of the Thrasher Plaintiffs using Shore Chan's power under the joint enterprise. The claims for "tortious interference with contractual and business relations" and "tortious interference with prospective contractual and business relations" involve actions taken by Shore Chan using the knowledge it received through its joint enterprise with the Thrasher Plaintiffs, in order to weaken the Thrasher Plaintiffs' rights under the

joint enterprise and strengthen its own. The fact that some of the counts do not explicitly use the phrase "joint enterprise" is immaterial given that the claims do rely on the fact of the existence of the joint enterprise and the actions of the parties taken under that joint enterprise. *See Sphere Drake Ins. v. Gainsco Cnty. Mut. Ins. Co.*, 273 F.3d 1100 (5th Cir. 2001) (table decision). Accordingly, the Court believes that each claim in the Thrasher Amended Petition bears a causal relation to Shore Chan's acts as a partner of the enterprise, and therefore each claim is excluded from coverage under Exclusion 5.[1]

Although Shore Chan does not provide a competing claim-by-claim analysis, Shore Chan attempts to rebut this conclusion with several somewhat novel assertions. Shore Chan first responds that the claims in the Thrasher Amended Complaint cannot be excluded because the Thrasher Plaintiffs asserted that the joint enterprise ended in "March of 2005" but that their claims arose from actions occurring from May 2005 through August 2007. Doc. 114, Br. at 4. Thus, Shore Chan claims that "each of the Thrasher Plaintiffs' [claims other than the Joint Enterprise/Breach of Fiduciary Duty claim] arose out of the Plaintiffs' alleged actions or omissions that occurred after the alleged 'joint enterprise' was terminated in March of 2005." *Id.* at 4-5. This argument is easily dismissed. Shore Chan was responsible for paying a portion of the fees it received from its work with the referred clients to the Thrasher Plaintiffs even after the agreement was terminated. As explained by Greenwich, "[t]he settlements and licensing set the damages; they did not retroactively eliminate the pre-existing obligations" of Shore Chan to the Thrasher Plaintiffs. Doc. 127, Resp. at 7.

---

[1]The Court also rejects Shore Chan's contention that some of the claims involve only the "referral agreement" and not the "joint enterprise"; the referral agreement is part and parcel of the UTA joint enterprise, and the claims themselves each involve the joint enterprise and not solely the general referral agreement.

Shore Chan next argues that Exclusion 5 does not apply because it requires that claims be "made by or against any business enterprise," but the Thrasher Amended Complaint was against "Shore Chan" and not the "joint enterprise." Doc. 114, Br. at 5. Greenwich counters Shore Chan's contention by explaining that "the only legally effective method of suing the enterprise" is maintaining "a suit against a party to hold them responsible for a joint enterprise obligation." Doc. 127, Resp. at 8. The Court agrees with Greenwich and concludes that the Thrasher Amended Complaint undoubtedly raised claims "by or against" the enterprise. *See* Tex. Bus. Orgs. Code § 152.211(a) ("A partnership may maintain an action against a partner for a breach of the partnership agreement or for the violation of a duty to the partnership causing harm to the partnership.").

Third, Shore Chan suggests that Exclusion 5 was "designed to exclude legal work performed by the insured for *its* enterprise." Doc. 114, Br. at 5. Shore Chan provides no factual or legal support for its assertion. The plain language of the Insurance Agreement does not limit the exclusion to applying only to situations where the insured negligently performed legal services for the enterprise itself.

Finally, Shore Chan contends that the Thrasher Amended Complaint contains no allegations that Shore Chan was "an officer, director, partner, or employee of [the]enterprise," and therefore the exclusion cannot apply. Doc. 114, Br. at 6. Shore Chan's argument is without merit. First, this Court held in its prior Order that at least one of the claims in the Thrasher Amended Complaint fell under the exclusion, necessarily indicating that the Thrasher Amended Complaint alleged that Shore Chan was "an officer, director, partner, or employee of [the]enterprise." Furthermore, the complaint sufficiently alleges that Shore Chan was a party to the referral agreement or a partner in the joint enterprise. Tex. Bus. Org Code § 152.051(b) ("[A]n association of two or more persons to carry on

a business for profit as owners creates a partnership, regardless of whether: (1) the persons intend to create a partnership; or (2) the association is called a 'partnership,' 'joint venture,' or other name.").

Because none of Shore Chan's arguments are compelling, the Court finds that Exclusion 5 applies to all claims in the Thrasher Amended Petition and, therefore, that Greenwich had no duty to defend Shore Chan against the Thrasher Amended Petition.[2] Greenwich's Motion for Summary Judgment (doc. 116) is **GRANTED**, and Shore Chan's Motion for Partial Summary Judgment (doc. 113) is **DENIED**.

B. *Consequential Damages for Lost Profits*

Next, Greenwich submits a Motion for Summary Judgment on the issue of whether Shore Chan can recover their alleged "consequential damages." In its summary judgment briefings, Shore Chan claims entitlement to consequential damages only for lost profits for the "time that [Shore Chan] could have spent working on other billable matters for other clients."[3] *See* doc. 121, Resp. at 4-5. There appears to be no dispute that the Insurance Agreement does not speak to the recovery of consequential damages or lost profits; rather, the parties dispute whether or not Texas courts would permit such recovery. The Court now turns to this narrow issue.

Greenwich argues that Shore Chan cannot recover consequential damages for lost profits.

---

[2]Because the Court has determined that Exclusion 5 applies to all claims in the Thrasher Amended Petition, it need not consider the applicability of Exclusion 8.

[3]Although Shore Chan alleges that "to save money on the defense [of the Thrasher Lawsuit], Plaintiffs performed various aspects of the legal work themselves," doc. 121, Resp. at 2, Shore Chan expressly disclaims that it seeks to recover damages for the fees and costs it expended in defending itself or assisting Gardere in defending it in the Thrasher Lawsuit. Shore Chan admits: "Plaintiffs do not seek to recover the actual attorneys' fees they incurred assisting in the defense of the Thrasher Lawsuit . . . instead, Plaintiffs measure the lost profits they incurred based on this time, as it would have been spent on other [billable] matters for paying clients." Doc. 121, Resp. at 2, 4-5.

Doc.106, Br. at 3. Greenwich asserts that "no court has ever awarded lawyers their lost profits from having to assist in their own defense and/or the prosecution of their own lawsuit against the carrier." *Id.* at 4. It also insists that Texas law does not permit recovery by a party for its time expended in defending litigation. *Id.* at 5-6. Greenwich cites several cases to support its proposition. In *Tana Oil & Gas Corp. v. McCall*, the Texas Supreme Court held that a party could not recover damages for "the value of the time they spent in defending themselves," which "time they would otherwise have spent representing their clients." 104 S.W.3d 80, 81-82 (Tex. 2003). Although *Tana Oil* involved a claim for tortious interference with a business relationship rather than a breach for a duty to defend, the analysis is instructive. Similarly, Greenwich points to an early case of the Texas Supreme Court holding: "Whatever difficulty there may be in determining what circumstances may or may not be considered in assessing the damages to which the plaintiffs may be entitled . . . there can be none in holding that expenses in attending court, and loss of time in prosecuting their own suit for its recovery, cannot in this state be submitted to the jury as proof of actual injury." *Craddock v. Goodwin*, 54 Tex. 578, 583 (1881). While *Craddock* involved actual–rather than consequential–damages, it too provides compelling instruction as to how Texas courts would decide whether lost time and opportunities constitute recoverable consequential damages in a duty-to-defend case. The Texas Court of Appeals has evaluated a claim for actual damages involving only attorney's fees and the "loss of time by [the plaintiff's president] and other employees," holding that "[e]xpenses of litigation are not recoverable as damages unless expressly provided by statute or contract," which expenses include "a litigant's loss of time." *Eberts v. Businesspeople Personnel Servs., Inc.*, 620 S.W.2d 861, 863 (Tex. Civ. App.—Dallas 1981, no writ) (citing cases). In another decision, the Texas Court of Appeals concluded that "the only time lost from work by either of the plaintiffs . . . was time lost

because of the pendency of the lawsuit, such as that required for depositions and attendance at the two trials in this case. This loss is an expense of litigation. We know of no authority supporting recovery of actual damages for such a loss . . . ." *Phillips v. Latham*, 523 S.W.2d 19, 27 (Tex. Civ. App.—Dallas 1975, writ ref'd n.r.e.).

In its Response to Greenwich's Motion, Shore Chan does not point the Court to any legal authority in favor of its entitlement to consequential damages for lost profits in time spent litigating the Thrasher suit rather than working on billable matters for clients or on other profitable enterprises. The few cases cited by Shore Chan discuss lost profits damages in traditional breach-of-contract cases, generally, and do not provide the Court with insight as to how the Texas Supreme Court would decide whether consequential damages for loss of time spent litigating are recoverable in duty-to-defend cases. Shore Chan only half-heartedly attempts to rebut Greenwich's arguments, stating merely that Greenwich's arguments "are of no moment." Doc. 121, Resp. at 5. Similarly, Shore Chan's attempt to distinguish the applicable analysis in the cases cited by Greenwich is not compelling, *see id.* at n.2, because the cases are merely cited to assist this Court in predicting a Texas interpretation, not as evidence of an existing rule.

By Shore Chan's own admission, the consequential damages it seeks to recover are *not* fees or costs that Shore Chan expended itself (separate from Gardere) in litigating the Thrasher Lawsuit. Doc. 121, Resp. at 4-5, 6 ("Plaintiffs do not seek to recover the actual attorneys' fees they incurred assisting in the defense of the Thrasher Lawsuit . . . ."; "Plaintiffs are not seeking to recover legal fees they have incurred."). Instead, Shore Chan merely seeks recovery for the time and effort that it put into its defense against the Thrasher suit rather than its business. Every defendant to a lawsuit, whether acting *pro se* or acting with counsel, expends time and effort into preparing for the case

against it–time and effort that could have been spent in some other productive manner had the defendant not been sued. The mere fact that Plaintiffs are involved in the legal profession does not grant them some special entitlement to compensation for the lost time and effort they expended towards their own defense. Shore Chan may not recover consequential damages for the time it spent acting as a client would in similar situations.[4]

Finally, Greenwich also points the Court to authority requiring that recoverable damages in breach of contract cases must have been foreseeable damages, i.e., damages that the parties contemplated to be a probable result of the breach at the time they made the contract. *Id.* Greenwich states simply that there is no evidence that the parties contemplated the consequential damages of Shore Chan's lost profits in taking time away from its other clients to prepare its defense *Id.* at 4. Shore Chan responds that whether consequential damages are foreseeable is a question of fact that cannot be determined on summary judgment, while at the same time alleging that the summary judgment evidence on this issue is "undisputed." Doc. 121, Resp. at 3-4. Despite this contention, the Court concludes that a party cannot foresee consequential damages if those damages are neither contemplated under the contract nor permitted by law.

Accordingly, the Court concludes that Shore Chan is not entitled to recover consequential damages for lost profits from "time that [Shore Chan] could have spent working on other billable matters for other clients." Greenwich's Motion for Summary Judgment (doc. 106) is **GRANTED**.

C.   *Litigating the Reasonableness and Necessity of Shore Chan's Fees*

Finally, Shore Chan filed a Motion for Partial Summary Judgment on the issue of whether

---

[4]Indeed, Shore Chan would have expended time and effort preparing for its defense even if Greenwich, rather than Gardere, had represented Shore Chan in the Thrasher Lawsuit.

trial on the amount of damages is necessary and whether Greenwich is precluded from challenging the reasonableness of Shore Chan's fees. Doc. 111, Br. at 1.

### i.   Reasonableness and Necessity is an Issue of Fact for Trial

Shore Chan suggests that trial on the reasonableness and necessity of its damages is unnecessary. *Id.* at 2. That issue, however, is one of fact that is not appropriate for disposition on summary judgment. *See, e.g., Rhodes v. Chi. Ins. Co.*, 719 F.2d 116, 120 (5th Cir. 1983) (explaining that where an insurer forfeits its right to conduct the defense, it must accept a settlement amount contracted by the insured, "subject only to the condition that any settlement be reasonable"); *see also Alticor, Inc. v. Nat'l Union Fire Ins. Co.*, 345 F. App'x 995, 999-1000 (6th Cir. 2009). As such, Shore Chan may not simply present its numbers to the Court, declare that no trial is necessary, and request the full amount of damages expended; Shore Chan must actually prove the reasonableness and necessity of its fees under Texas law. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (examining the burden of proving the reasonableness and necessity of fees).

### ii.   Greenwich's Ability to Challenge the Reasonableness of Shore Chan's Fees

Next, the Court must determine whether Greenwich is entitled to contest the reasonableness and necessity of the fees incurred by Shore Chan; in other words, whether Greenwich may participate in arguing against the reasonableness and necessity of Shore Chan's defense costs. Texas courts have not spoken directly to this issue, so the Court must engage in an *Erie* guess.

In support of its argument on summary judgment that Greenwich may not participate in the reasonableness inquiry, Shore Chan points to a decision of the Seventh Circuit Court of Appeals stating that "the duty to defend would be significantly undermined if an insurance company could, by the facile expedient of hiring an audit firm to pick apart a law firm's billing, obtain an evidentiary

hearing on how much of the insured's defense costs it had to reimburse." *Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1077 (7th Cir. 2004). Shore Chan admits that the Texas Supreme Court has not expressly ruled on the issue of whether an insurer can challenge the reasonableness of fees, as opposed to settlement amounts, but provides Texas precedent holding that where "an insurer wrongfully denies coverage and its insured then enters into an agreed judgment, the insurer is barred from challenging the reasonableness of the settlement amount." *Evanston Ins. Co. v. ATOFINA Petrochems., Inc.*, 51 Tex. Sup. J. 1018, at *27 (Tex. 2008) (citing *Emp'rs Cas. Co. v. Block*, 744 S.W.2d 940, 943 (Tex. 1988)). Shore Chan also points to a case holding that an insurer "gave up the right to control the defense costs" by not participating in the defense. *Nutmeg Ins. Co. v. Emp'rs Ins. Co.*, 3:04-CV-1762-BF(R), 2006 U.S. Dist. LEXIS 7246, at *47 (N.D. Tex. Feb. 24, 2006). The *Nutmeg* decision rejected an insurer's attempt to demonstrate through affidavit that the fees incurred by the insured were not "reasonable attorneys fees in Texas," because the proper measure of damages was the insured's actual defense costs. *Id.*

The Court finds that Texas law is settled that an insured who abdicates its duty to defend is barred from challenging the reasonableness of a *settlement award* agreed to by the insured, where the insurer was invited to participate in the underlying litigation but intentionally chose to forgo providing any defense. *See Evanston Ins.*, 51 Tex. Sup. J. 1018, at *31; *Block*, 744 S.W.2d at 942-43; *Great Am. Indem. Co. v. City of Corpus Christi*, 192 S.W.2d 917, 919 (Tex. Civ. App.—San Antonio 1945, writ ref'd); *see also U.S. Aviation Underwriters, Inc. v. Olympia Wings, Inc.*, 896 F.2d 949, 954 (5th Cir. 1990). Without further guidance from the parties, the Court believes that the Texas Supreme Court would extend this holding and decide that an insurer who abdicates its duty to defend is also barred from directly challenging the reasonableness and necessity of the insured's

attorney's fees. This is especially so because an insurer gives up the right to control the defense once it abandons its insured: "It is well settled that once an insurer has breached its duty to defend, the insured is free to proceed as he sees fit; he may engage his own counsel and either settle or litigate, at his option." *See Rhodes*, 719 F.2d at 120 (citing *Great Am. Indem.*, 192 S.W.2d at 919).

Another federal court, making an *Erie* guess as to Rhode Island law, elaborated upon the limits of an insurer's ability to participate in the fee reasonableness inquiry despite refusing its duty to defend. That court rationalized that, where an insurer refuses to act upon its duty to defend, the initial burden remains "on the insured to prove that its fees were reasonable (not on the insurer to prove the negative)." *Emhart Indus. v. Home Ins. Co.*, 515 F. Supp. 2d 228, 251 (D.R.I. 2007). However, the court explained:

> An insurer's ability to contest this proffer . . . is somewhat diminished (although not entirely eradicated). For example, second guessing an insured's tactical decisions within the defensive sphere is generally precluded, and uncertainties in the nature and extent of an insured's legal representation are to be resolved against the breaching insurer. These nuances recognize that, by breaching its duty to defend, the insurer effectively ceded its 'right and duty' to control the manner and scope of the defense.

*Id.* at 251-52 (internal citation omitted). This Court finds the rationale outlined in *Emhart Industries* to be compelling and equally applicable to its analysis of Texas law.

Finally, the Court notes that Greenwich itself does not elaborate on the issue of whether it may contest the reasonableness and necessity of Shore Chan's alleged attorney's fees from the Thrasher Lawsuit. Instead, Greenwich focuses its brief on responding to Shore Chan's argument that Shore Chan need not prove the reasonableness and necessity of its fees, an argument that this Court has already rejected. Thus, it appears that even Greenwich does not seriously dispute that it is able to fully and directly challenge the reasonableness and necessity of the fees alleged to be incurred

during the Thrasher Lawsuit.

Therefore, the Court concludes that because Greenwich gave up its right to control the defense when it declined its duty to defend Shore Chan, Greenwich may not directly challenge the reasonableness and necessity of Shore Chan's attorney's fees. However, Greenwich may contest the admissibility or sufficiency of Shore Chan's evidence or make relevant legal argument as Shore Chan undertakes its burden of proving its damages. Shore Chan's Motion for Partial Summary Judgment (doc. 110) is therefore **GRANTED IN PART**.

## IV.

## CONCLUSION

For the reasons stated above, Greenwich's Motion for Summary Judgment on the issue of the applicability of Exclusions 5 and 8 is **GRANTED**, and Shore Chan's Motion for Partial Summary Judgment on the issue of the applicability of Exclusions 5 and 8 is **DENIED**. Greenwich's Motion for Summary Judgment on the issue of the recoverability of consequential damages is **GRANTED**, and Shore Chan's Motion for Partial Summary Judgment regarding litigation of its fee reasonableness is **GRANTED** in part.

The surviving issue is the amount of damages that Shore Chan is entitled to recover for Greenwich's breach of its duty to defend Shore Chan against the Thrasher Original Petition. Also remaining are several of Shore Chan's claims under Texas Insurance Code § 542.051 *et seq.*, which the parties have agreed to attempt to resolve among themselves, per their Agreed Order of May 1, 2012. Doc. 103, ¶¶ 6-9.

SO ORDERED.

DATED October 24, 2012

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE